# United States Court of Appeals
Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

In Replying Give Number
Of Case And Names of Parties

September 23, 1999

Carlos Juenke MIAMI
Clerk, U.S. District Court
Federal Courthouse Square, 301 N. Miami Ave.
Miami FL 33128

RE: 98-4337-HH     USA v. Reid
DC DKT NO.: 96-00798 CR-FAM



FILED by _____ D.C.
SEP 23 1999
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
  ✓ Original Exhibits, consisting of one PSI
  ✓ Original record on appeal or review, consisting of five volumes

Please acknowledge receipt on the enclosed copy of this letter.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Jenifer Alexander (404) 335-6134

Encl.



REC'D by _____ D.C.
APPEAL
SEP 30 1999
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

MDT-1 (1-1999)

# United States Court of Appeals
## For the Eleventh Circuit

No. 98-4337

District Court Docket No. 96-798-CR

```
                              FILED
                         U.S. COURT OF APPEALS
                           ELEVENTH CIRCUIT

                             AUG 20 1999

                           THOMAS K. KAHN
                              CLERK
```

UNITED STATES OF AMERICA,

                                                             Plaintiff-Appellee,

versus

SYLVESTER REID,

                                                             Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida

---

Before ANDERSON, Chief Judge, MARCUS, Circuit Judge, and MILLS*, District Judge.

### JUDGMENT

This cause came to be heard on the transcript of the record from the United States District Court for the Southern District of Florida, and was argued by counsel;

UPON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the judgment of conviction of the said District Court in this cause be and the same is hereby AFFIRMED.

---

* Honorable Richard H. Mills, Senior U.S. District Judge for the Central District of Illinois.

                                          Entered: August 20, 1999
                                      For the Court: Thomas K. Kahn, Clerk

                                                              By: /s/ Matt Davidson

ISSUED AS MANDATE: SEP 23 1999      A True Copy - Attested: Deputy Clerk
                                               Clerk, U.S. Court of Appeals
                                                 Eleventh Circuit

                                                By: /s/ Jennifer Alexander
                                                Deputy Clerk
                                                Atlanta, Georgia

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 98-4337

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 20 1999
THOMAS K. KAHN
CLERK

D. C. Docket No. 96-798-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SYLVESTER REID,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

(August 20, 1999)

Before ANDERSON, Chief Judge, MARCUS, Circuit Judge, and MILLS*, District Judge.

---

*Honorable Richard H. Mills, Senior U.S. District Judge for the Central District of Illinois, sitting by designation.

PER CURIAM:

After a two-day trial, the defendant Sylvester Reid was convicted of three armed robberies, in violation of the Hobbs Act, 18 U.S.C. §1951(b), and of using and carrying a firearm during the robberies, in violation of 18 U.S.C. §§ 924(c) and 2. The district court later sentenced him to a total of 660 months of imprisonment, a two-year term of supervised release, and a special assessment of $300. On appeal, the defendant raises three issues: 1) whether the prosecutor deprived him of a fair trial by allegedly threatening a defense witness with prosecution should his testimony be self-incriminating; 2) whether the prosecutor improperly commented in rebuttal argument on the defendant's failure to call the witness; and 3) whether the district court erroneously excluded testimony that a witness to one robbery excitedly reported to the police that she had just seen the perpetrator of the robbery several months after the defendant was incarcerated. After thoroughly reviewing the record and the briefs, we find no error and affirm the judgment of the district court.

Normally, we review a district court's factual determination whether a prosecutor substantially interfered with a defense witness' free choice to testify for clear error. *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988); *United States v. Thompson*, 130 F.3d 676, 686 (5th Cir. 1997); *United States. v. Vavages*, 151 F.3d

2

1185 (9th Cir. 1998). However, where the defendant fails to interpose a contemporaneous objection to the alleged prosecutorial misconduct, the standard of review is plain error. *United States v. Young*, 470 U.S. 1, 6-7 (1985); *United States v. Lacayo*, 758 F.2d 1559, 1564 (11th Cir.), *cert. denied*, 474 U.S. 1019 (1985). We review for abuse of discretion a district court's determination overruling a defendant's objection to the prosecutor's closing argument. *United States v. Knowles*, 66 F.3d 1146, 1163 (11th Cir. 1995). Finally, we review for abuse of discretion a district court's evidentiary ruling excluding hearsay evidence. *United States v. Smith*, 918 F.2d 1501, 1510-11 (11th Cir. 1990).

The facts presented during the trial are simple and straightforward. The prosecutor introduced evidence that implicated the defendant in three separate shoe store robberies. As for the first armed robbery, Raul Gonzalez, who was robbed at gunpoint on March 9, 1996, while working at a Shoe World store in Miami, positively identified the defendant in a lineup after the robbery, although he was unable to identify Reid in court. As for the second robbery, Kestia Marcelus identified Reid in a photographic lineup and again in court as the man who robbed her at gunpoint at a Payless shoe store on March 14, 1996. Additionally, the police matched the defendant's standard record fingerprints with those found on a shoe box

3

the robber handled while in the Payless store. Finally, evidence was presented that on <u>March 18, 1996</u>, the robber returned again to the same Shoe World store he had robbed on March 9. Again, the robber approached Gonzalez, who recognized the man immediately. Gonzalez began to move away from the robber, but at that point, a second robber, wearing a surgical mask and holding a hand gun, approached another store employee, Meriam Dume. The masked gunman told Dume to open the register, and she went to the back of the store to get the key from the store manager, Jose Perez. The unmasked robber escorted Perez to the cash register, and, after taking the money, the two robbers left the store. Afterwards, both Perez and Dume positively identified the defendant Reid in separate photographic lineups. Both also identified Reid in court as the unmasked robber.

At trial, Reid's defense was that Marvin Cannon, Reid's brother, and not Reid, had committed the robberies. The defense intended to call Cannon to testify as to his arrest for robbing a Miami shoe store in September 1996. Among other things, the defense introduced a photograph of Cannon to show a physical resemblance to the defendant Reid, and also presented testimony from two police officers who interviewed witnesses to the charged March 9th and March 14th robberies to suggest

4

that the witness' descriptions of the robberies differed from each other and from the physical description of Reid.

When Reid's attorney announced that he was calling Cannon to the stand, the prosecutor asked for a side bar conference with the district court, and the court excused the jury. Cannon was present throughout the conference. The prosecutor observed that Cannon should be advised that if he took the stand and admitted committing the robberies, he would place himself in "some peril." The district court agreed, and carefully instructed Cannon that the Fifth Amendment protects him from self-incrimination, that Reid's lawyer would ask Cannon questions that may incriminate him, and that Cannon could invoke his Fifth Amendment privileges and decline to answer. Thereafter, the court asked Cannon whether he intended to invoke his Fifth Amendment privilege. At this point, Reid's attorney told the court that he would not place Cannon in risk of criminal exposure since he had no intention of asking him whether he committed the charged robberies. The court observed that if this was the case, the evidence of whether Cannon committed the other robbery would be irrelevant to the charges. The court also observed that if Cannon testified, the prosecutor would not be foreclosed from asking him whether he committed the charged robberies. While conceding that the prosecutor would not be foreclosed from

5

then asking Cannon whether he committed the crimes, Reid asserted that, nevertheless, Cannon would not be entitled to invoke his Fifth Amendment rights.

The court then asked the prosecutor what his position was on the scope of his examination of Cannon. The prosecutor responded:

> You have capsulized my argument wholeheartedly. If he is to take the stand and talk about the fact that he was arrested for this robbery, then I believe that the Government has the right to inquire about his activities concerning that robbery, whether or not he actually committed it, and if he says, yes, he has placed himself in great harm.
>
> [The Court:] No question about it.
>
> [Prosecutor:] Because that transcript will be sent directly to the State Attorney's office, and he has made an admission against his interests.
>
> [The Court:] There is no question, but that would make it admissible and that has no impact on me. Once I have advised him of what to do, it is his decision to make. That would make my job easier.

(R3- 423).

Out of an abundance of caution, the district court informed Cannon that he would appoint a separate attorney to advise him, and then Cannon could decide whether he would invoke his privilege against self-incrimination. After talking to his new attorney, Cannon advised the court though counsel, that if called to the stand he would invoke his Fifth Amendment privilege to remain silent. Cannon was then sworn as a witness, and Reid's counsel proffered the questions he intended to ask

6

Cannon in front of the jury. Cannon invoked his privilege as to all of them, and the district court found that Cannon had a well-grounded basis for invoking the privilege and excused Cannon.

On appeal, Reid first claims that the prosecutor's statement in Cannon's presence that the "transcript will be sent directly to the State Attorney's office" improperly threatened the witness with prosecution and coerced him into not testifying.[1] Relying on *United States v. Schlei*, 122 F.3d 944 (11th Cir. 1997), and *United States v. Golding*, 168 F.3d 700 (4th Cir. 1997), Reid argues that the prosecutor violated his right to due process by threatening to facilitate his key witness's criminal prosecution in the event that witness testified for the defense. We are unpersuaded by this claim. In *Schlei*, the district court failed to hold an

---

[1] Reid also contended in his brief that the district court exacerbated the situation by agreeing with the prosecutor. During oral argument, he retreated from this position. In any case, we find that the district court acted properly throughout. The district court has a duty to protect a witness from violation of his Fifth Amendment rights. As the Fifth Circuit made clear many years ago: "[T]he Judge is present as the embodiment of the Constitution, charged with the firm duty to see the rights of all are upheld[,] the defendants, the witnesses and the public. Whether and to whatever extent it may be the duty of the trial judge to caution a witness about his Fifth Amendment rights, a careful one never hesitates." *United States v. Colyer*, 571 F.2d 941, 945 (5th Cir.), *cert. denied*, 439 U.S. 933 (1978) (quoting *United States v. Wilcox*, 450 F.2d 1131, 1139 (5th Cir. 1971), *cert. denied*, 405 U.S. 917 (1972)). The district court did exactly this in the instant case. He explained to Cannon what his Fifth Amendment rights were, asked him if he wished to invoke the privilege, and appointed counsel for him when Cannon indicated he wanted the advice of counsel.

evidentiary hearing to determine whether witness intimidation took place even though the allegations of intimidation were serious; the affidavit from the witness asserted that the prosecutor threatened to revoke his immunity should he testify on the defendant's behalf. In *Golding*, the prosecutor approached defense counsel and threatened the witness, the defendant's wife, to prosecute her federally, even though state charges had been dismissed, if she took the stand on behalf of her husband. These cases are distinguishable from the instant one. Here, the prosecutor's observation that he would send the transcript to the state attorney was not a baseless or ill-motivated threat to prosecute. Indeed, it was not a threat at all. The prosecutor simply said that he would turn the transcript over to the state attorney. At most, the prosecutor's remarks could be characterized as informing or warning Cannon that he might be exposing himself with the proposed testimony. The statement was neither threatening nor unduly coercive. Moreover, since there was no contemporaneous objection to the prosecutor's comment, we review for plain error. On this record, we can find no error, let alone plain error.

Reid also argues on appeal that the prosecutor committed misconduct by making the following statement during the rebuttal portion of his closing argument:

> This is not an orchestration on the Government's part to convict Mr. Reid. The evidence convicts Mr. Reid. They [the defense] said it is

> equally possible that Marvin [Cannon] committed these robberies. Equally possible based on what? Their wish? The facts don't support that. The facts support Sylvester Reid.
>
> What evidence we do have about Marvin, Marvin, Cannon? Who is Marvin Cannon? I sat here. I thought I was in a Perry Mason movie. I kept looking at the back of the door waiting for somebody to walk in and say "I'm Marvin Cannon" –

(R4-515).

Reid objected, but the district court overruled the objection. As for the first part of the prosecutor's rebuttal we can discern no error. Much of the prosecutor's comments referred to the defendant's failure to counter or explain the evidence pointing to Reid's guilt. *See United States v. Heindrieth*, 922 F.2d 748, 751 (11th Cir. 1991). Moreover, some of the prosecutor's response was invited by the defense counsel's claim that the government tried to hide from the jury the testimony of police officers who would testify about an inconsistent description of the robber.

We agree with Reid, however, that the prosecutor's reference to a Perry Mason movie, and the ensuing comment that the prosecutor was "looking at the back of the door waiting for somebody to walk in and say, 'I'm Marvin Cannon . . .'" was improper. The comment permitted the erroneous inference that Reid could have called Cannon to testify on his behalf but chose not to do so, when in fact Reid was not in control of Cannon and could not prevent Cannon from invoking his Fifth

9

Amendment privilege against self-incrimination. Nevertheless, we find the error harmless for several reasons. In the first place, the comment was not a direct statement that the defense had an obligation to put on Cannon as a witness, but rather was more elliptical and inferential in nature. Second, although the district court overruled the defendant's objection to the prosecutor's comments, it sufficiently cured the error by unambiguously informing the jury that the burden rests with the government to prove the defendant guilty beyond a reasonable doubt. *See generally United States v. Tisdale,* 817 F.2d 1552 (11th Cir.), *cert. denied,* 484 U.S. 868 (1987). Lastly, and most important, the evidence against Reid was overwhelming, including four witnesses who identified Reid as the perpetrator, three of whom were able to positively identify him in court, and his fingerprint was found on a shoe box that the robber handled in the March 14, 1996 robbery of the Payless shoe store. *See, e.g., United States v. McRae,* 593 F.2d 700, 706-707 (5th Cir.) (en banc), *cert. denied,* 444 U.S. 862 (1979).

Finally, Reid argues that the district court erred in excluding the hearsay testimony of a police officer who would have testified to a statement made by Tamara Smith, a former employee of the Payless Store, apparently misidentifying Cannon as Reid on May 28, 1996, although Reid was in jail at the time. Reid argues on appeal

10

that the statement was admissible as either a present sense impression or an excited utterance under Fed. R. Evid. 803(1) and (2). The district court excluded the statement, finding that it was cumulative and unnecessary. We can discern no abuse of discretion in this ruling. In fact, the district court allowed Reid to introduce evidence of Smith's putative misidentification through two other witnesses, Sophia Montague and Kestia Marcelus.

In sum, we find no reversible error and we affirm appellant's conviction.

AFFIRMED.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit
By: [signature] Alexander
Deputy Clerk
Atlanta, Georgia